## CROSS v. SABIN and others.

*(Circuit Court, E. D. Tennessee. 1882.)*

1. BILL TO ENJOIN WASTE AND REMOVE CLOUD ON TITLE—TITLE TO BE SHOWN.
    A complainant not in possession, who seeks by bill in equity to enjoin waste and remove a cloud upon his title to land, which at the time is in possession of an adverse claimant, must show a good title in himself or fail in his suit.

2. GRANT—PRIORITY.
    A grant of land by the state of Tennessee, on the eleventh November, 1841, on an entry made in 1840, is paramount to a grant issued in 1845, on an entry made in 1830.

3. SAME—IN WHOM TITLE VESTS.
    A grant to John H. Jones & Co. vests the legal title in John H. Jones, for himself and in trust for his partners, in proportion to their several interests.

4. STATUTE OF LIMITATIONS—SUSPENSION BY WAR.
    The existence of war suspends the statute of limitations as between citizens of the adverse, belligerent powers, but not as between citizens of the same power.

5. SAME—EFFECT OF WAR AND CLOSING OF COURTS.
    A public war and the closing of the courts conjointly would suspend the statute of limitation. But if the means provided by law for the issuance and service of process exist, whereby injured parties can commence suit, the court is not "closed," although they are not regularly held at the times appointed by law, and the probabilities are that a suit then brought would not be tried until after the cessation of hostilities.

6. SAME—JUDICIAL KNOWLEDGE.
    Courts may take judicial notice of the existence of a public war, when it commenced and when it terminated, and all of its historical incidents; but the courts cannot take judicial cognizance of the fact that the courts of a particular county were closed. If the fact exists, and is relied on by either party to a suit, it must be established by extraneous evidence, as other ordinary facts are required to be proven.

7. POSSESSION—EFFECT OF.
    An actual, exclusive, continuous, and adverse possession of granted land in Tennessee for seven years, by a party claiming under a color of title, defining boundaries and purporting to convey a fee-simple estate, will vest the possessor with a good title in fee.

8. SAME—BY BOTH PARTIES.
    Where small quantities of a tract of land adversely claimed by the contending parties have been held by both of them during the same period, the owner of the superior title is, by construction of law, in possession of all the land embraced within his title not in the actual possession of the adverse claimant.

9. THE FACTS OF THIS CASE.
    Complainant sues for 3,000 acres of unimproved mountain land. He had held two or three acres thereof by his tenant for more than seven years, claiming the whole under color of title, purporting to convey a fee. But during the same period the defendants, and those from whom they claim, who owned the superior title, had possession of about the same quantity of the land claimed by them both. Complainant contended that, notwithstanding the conceded fact that defendants had both the title and possession, defendants did not claim the

land under their better title; that they owned another adjoining tract whi: h they intended to hold, but by mistake extended their possession over and upon a small part of the land in controversy; that their said possession was by mistake and unintentional; wherefore complainant insisted that he had acquired by his adverse holding a good title to all the lands in controversy not in the actual possession of defendants.

*Held,* that possibly a case might arise in which the claimant under the junior title might thus acquire a good title as against the owner of the superior title, who held a contemporaneous possession, as well as the better title. But the court finds, in this case, defendants held under their superior title, claiming the whole, and that their possession neutralized complainant's possession as to all of said land, except such as complainant had in actual possession.

*C. E Lucky* and *James Comfort,* for complainant.

*Samuel J. Kirkpatrick* and *H. H. Ingersoll,* for defendants.

BAXTER, C. J. The complainant claims that he is the owner in fee of the 3,000 acres of land described in his bill; that in March, 1880, Sally Harvey and others, widow and heirs at law of Thomas Harvey, deceased, made a conveyance of 5,000 acres to the defendant Guy E. Sabin, under and in virtue of which Sabin claims complainant's land. He further charges that Sabin has sold to his codefendants, Miller and Carr, the right to take and appropriate all the timber standing thereon; that they had cut and appropriated a part thereof; and that they were then actively engaged in cutting and removing the balance. He further charges that the defendants are "financially unable to meet and pay the damages" to result to complainant from their trespasses, whereby, as he avers, he "will sustain irreparable loss." Upon these allegations he prays for an injunction to stay further waste, for an account of damages already done, and for a decree removing the cloud on his title created by the deed from the Harveys to Sabin.

Defendants answer and admit the trespasses complained of, but deny complainant's claim of title, and assert title in Sabin.

From this brief summary of the pleadings it will be seen that the principal question to be determined is one of title. Complainant must, as against defendants, who are lawfully in possession of the premises, show title in himself or fail in his suit, and he essays to prove the fact. His claim is that he acquired title under a grant issued by the state to John H. Jones & Co. on the second of June, 1845, upon an entry made in 1830, which he puts in evidence. But this grant is of no avail to him unless he goes further and shows that the title thereby vested in John H. Jones & Co., if any, has been conveyed to him. To do this he assumes that one John Andes was a member of the firm of John H. Jones & Co., and as such vested .

with title to an undivided moiety of the land granted. But there is no evidence in the record to support this assumption. If John Andes was a member of that firm the fact has not been proven. But it does appear that he assumed to convey an undivided half of said premises to Henry Bell, who afterwards conveyed it to complainant. Now, if we assume that these conveyances vested the complainant with a good title to an undivided moiety of said land, it is clear that the title to the other half thereof remained in Jones, unless complainant in some way acquired that also. This he claims to have done, and offers, in support of his claim, an exemplification of a record from the chancery court at Jonesboro, which, he insists, shows that Jones' interest in the land was duly attached at the instance of creditors under process issuing from that court, and that Jones' interest therein was judicially divested by a sale duly made pursuant to the decrees rendered in that case, and vested in a Mrs. Johnson. Complainant then exhibits a deed conveying her interest therein to James S. Jones, a deed from James S. Jones to James Bell, a deed from James Bell to Henry Bell,—to whom Andes had previously conveyed,—and a deed from the latter to complainant for the whole tract.

Now, if the sale made by authority of the chancery court did in fact divest Jones' title, and vest the same in Mrs. Johnson, the purchaser, then the complainant, in virtue thereof, and the subsequent mesne conveyances under which he claims, succeeded thereto. But the record of said judicial proceeding is fatally defective in this: It does not show that Jones was legally before the court, or sufficiently describe or identify the land, and for these reasons the court entertains the opinion that his title was not divested by that proceeding, but that the same still remains in him, unaffected by the decrees made in said cause, and sale made pursuant thereto. Nor does the complainant stand in any better position touching the moiety claimed to have been derived from Andes. The grant to John H. Jones & Co. vested the title in John H. Jones, (*Moreau* v. *Safferans*, 3 Sneed, 595; *Holmes* v. *Moorn*, 7 Heisk. 506;) and if Andes was, as is alleged in argument, a member of the firm of John H. Jones & Co., and as such entitled to an equitable interest therein, he could not by his deed pass the legal estate. But, as has been already said, there is no evidence that he was a member of said firm, or otherwise interested in said land, and consequently his deed to Henry Bell, from whom complainant purchased, conveyed nothing whatever. Hence, if complainant was left to stand upon his evidences of title, unopposed by any title in the defendants, the

judgment of the court would be against him.   But defendants have put in evidence a grant from the state to Thomas Harvey, under which they claim to have derived title to 5,000 acres of land, including the 3,000 acres claimed by the complainant, issued on the eleventh of November, 1841, upon an entry made in 1840.   This is a superior title to the title claimed by complainant under the grant of the second of June, 1845, to John H. Jones & Co., even if it were shown that the complainant had succeeded to the rights of said grantee.   *Williamson* v. *Throop*, 11 Humph. 265; *Sampson* v. *Taylor*, 1 Sneed, 600; *Blevins* v. *Crew*, 3 Sneed, 154; and *Bullock* v. *Tipton*, 2 Head, 408.   Complainant is, therefore, upon the face of the papers offered in evidence, without title to the premises sued for; and if there was nothing more in the case, his bill would be dismissed without further discussion.

But he contends that he has, by himself and by his tenants, and by those from whom he claims to have derived his color of title, been in the actual, exclusive, continuous, and adverse possession of parts of said land, claiming the whole for more than seven years prior to the commencement of this suit under conveyances, purporting to have conveyed an estate in fee; whereby, as he insists, he has, under section 2763 of the Code of Tennessee, acquired a fee-simple title thereto. Such a holding would undoubtedly vest him with a good title.   But does the evidence show such holding?   It is upon this point the determination of the case depends.   The evidence is voluminous, diffuse, and conflicting.   It relates to the occupancy of different portions of the premises by Martin Dewry, Bassil Owens, and Robert Mathes.   Complainant contends that each of these parties was a tenant of some one of the parties under and through whom he claims, prior to his purchase, and that two of them, to-wit, Owens and Mathes, afterwards, in 1859, attorned to and thereafter held under him.   It would require too much space to review in detail all the testimony offered on this point.   The announcement of our conclusions must suffice.   It does appear that both Dewry and Owens occupied separate portions of the land, but it does not satisfactorily appear when they respectively entered, how or under whom they claimed, if under any one, nor when they left.   In the judgment of the court Dewry left more than 40 years ago, and Owens abandoned his possession before 1850.   Neither of these possessions can, as we think, in any way strengthen complainant's title, for if it appeared that they had entered and held under some one or more of the parties from whom complain-

ant claims, his holding was not under such color of title defining boundaries as would divest Harvey's title and vest it in complainant.

The contention is that Dewry held under Andes, but the proof does not sufficiently sustain the assumption. If it did, we have already shown that Andes had neither title nor the color of title; besides, it is shown beyond a reasonable doubt that Dewry quit the premises before the issuance of the grant to John H. Jones & Co., under which, it is said, complainant acquired such interest as he had therein. The contention further is that Owens held under Bell. But it distinctly appears that Bell did not acquire the color of title under which he claimed until January, 1856; and it is not probable that he would have assumed to lease the land before he acquired a claim thereto; but if it were shown that he had, then the possession of his tenant was without color, and of course unavailing to perfect his title unless it had been continued long enough to raise a presumption of a grant, and the complainant does not claim this. It follows that the only inquiry remaining is to ascertain the nature and extent of Mathes' occupancy of the land in question. When and under whom did he go into possession, and how long did he continue to occupy it? Upon this point Mathes, who has been examined as a witness, says that he leased from James Bell in 1855, and went into possession in 1856. He does not state at what time in 1856 he entered, but considering his testimony in connection with the evidence of other witnesses, it is believed that his entry thereon was in the early part of 1856, and he continued to hold until 1864 or 1865, more than seven years. As before stated, the terms of his lease and the character and extent of his holding are not definitely disclosed. But if we supply this omission, and assume that he was, under the terms of his lease, in actual or constructive possession of the whole tract claimed, his possession, in the absence of all neutralizing causes, would have divested defendant's title and vested it in complainant. The statute having begun to run in 1856, would have completed its work and barred defendant's right of action in 1863. But the defendants contend that the operation of the statute was suspended, as between citizens of the different adverse belligerent powers, by the pendency of the late rebellion. The proposition is conceded to be correct. And it is true that complainant was a citizen of Maryland and an adherent of the federal Union, and that defendants, or those from whom they claim, were resident citizens of Tennessee, one of the confederate states. But Mathes, complainant's tenant, who resided on the

land, was a citizen and resident of the confederate states, and was amenable to suit; and although a recovery against him would not have concluded the complainant, a suit against him would have suspended the operation of the statute of limitation, and protected defendants' title; and hence we have reached the conclusion that this case must be regarded as one between citizens of the same belligerent power, and that the statute of limitations was not suspended by reason of the war.

Thereupon the defendants say, *secondly,* that the war closed the courts; that in consequence defendants could not have brought and successfully prosecuted a suit to eject Mathes from the premises; and that the two causes—the existence of war and the closing of the courts—operated to suspend the statute of limitations. This is correct, provided it sufficiently appears that the courts were closed. *Harrison* v. *Henderson,* 7 Heisk. 346–7. But no evidence has been offered to prove the fact. Defendants, however, contend that the fact is one of which the court is bound to take judicial notice. There are many things of which the courts may, without proof, take judicial cognizance. We know that there was a civil war between the federal government and the confederate states. We are bound to know when it began and when it terminated, and take judicial cognizance of its historical incidents; but we cannot, according to the authority of *Anderson* v. *Talbott,* 1 Heisk. 402, judicially know that the courts of Washington county—the county in whch the land in controversy lies—were closed before the statute effected a bar in complainant's favor. But if it were otherwise,—if the closing of the courts of a particular county by war is a fact which this court is bound to know without proof,—our holding, in this instance, would be against defendants. We know that the courts of Washington county were not regularly held at the times designated by law, but all the machinery provided for the issuance and service of process existed; and, although suits then brought could not have been tried until after the cessation of hostilities, there was no obstacle in the way of commencing them prior to August, 1863, at which time Mathes had held for more than seven years; and upon these facts, we think, the statute of limitations was not suspended as between the parties to this suit.

But in the judgment of the court Mathes' possession, though adverse to Harvey, was not exclusive. Harvey's 5,000-acre grant includes the 3,000 acres claimed by the complainant. Near the center of these Harvey owned an 150-acre tract, under a title superior to both grants, on which more than 40 years since he entered

and built a dwelling-house, erected a stable and other appurtenant buildings, and cleared a farm, which he, and those succeeding under his 5,000-acre grant, have continued to hold, occupy, cultivate, and possess, from his first entrance thereon till the commencement of this suit.

The fences inclosing this farm extend over the lines of the 150-acre tract, and include from one and a half to four acres of the 5,000-acre grant. This possession, commencing before and continuing long .after Mathes' possession had ceased, neutralized the latter to the extent of restricting his possession to his actual enclosures, unless this legal consequence is averted by the evidence to be hereafter considered. It is contended that Harvey, from whom defendants claim, did not, in fact, hold that part of his farm outside the boundaries of his 150-acre tract, under his 5,000-acre grant; that neither he nor those who succeeded and claimed under him intended to inclose any part thereof not embraced within his 150-acre tract; and that they did .not, by their possession, assert or intend to assert title to any part thereof, and that therefore the possession did not inure to their benefit, or neutralize Mathes' possession. The proposition is that notwithstanding defendants have had both the title to the whole and possession of a part of the premises in controversy for more than 40 years, yet as they did not hold it under and in virtue of their better title— the 5,000-acre grant—the title thereto has been wrested from them and vested in complainant by Mathes' adverse possession. Possibly a case might arise in which such a claim could be sustained.

But the evidence in this case does not present such a case. Complainant's testimony, apart from that offered by defendants, tends to sustain the theory that Harvey did not, by his possession outside the boundaries of the 150-acre tract, claim, or intend to claim, any part of ·the 5,000-acre tract. It forcibly indicates that Harvey, the grantee, believed, during his holding thereof, that his improvements and possession were within the limits of the 150-acre tract. But, on the other hand, it appears that more than 40 years since, and .after he had purchased the 150-acre tract, he entered, and subsequently obtained, a grant for the 5,000 acres surrounding it; that his title thus acquired was and is superior to complainant's title; and that he, and those claiming under him down to and including defendants, have, in fact, occupied a part thereof for the long period mentioned. The law presumes that they held under their title. But this is not all. Defendants have supplemented the legal presumption by the evidence of 18 or 20 witnesses, who testify that they have resided in that vicinity for long periods; that they

knew both Harvey and the land in controversy; and that during said periods, and while Harvey was so occupying a part of the 5,000-acre tract, he claimed title thereto, made a road for his convenience to and through the premises, cut and used the timber found thereon for staves and other purposes, and grazed his stock thereon, and authorized others to get timber therefrom and pasture their stock on the premises. But notwithstanding this conflict of evidence, which cannot be easily reconciled or explained, the preponderance, we think, as well as presumption of law, is with defendants. Harvey's possession, being in virtue of his superior title, embraced, by construction, the whole tract not in the actual adverse possession of Mathes. But it does not exceed two or three acres, on which defendants have neither entered nor threatened to trespass; and hence there is no necessity for an injunction to protect complainant as to these few acres, to which he has probably acquired a title through Mathes' holding.

Complainant's bill will therefore be dismissed, with costs; but as he may wish to retry the issue in a court of law, the appropriate forum for the trial of such controversies, the same will be dismissed without prejudice.